1 Derek Linke
  Derek A. Newman
2 NEWMAN & NEWMAN,
  ATTORNEYS AT LAW, LLP
3 505 Fifth Ave. South, Suite 610
  Seattle, WA 98104
4 (206) 274-2800

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES S. GORDON, JR. | NO. 08-cv-5037-RHW |
| Plaintiff, | **SUBSCRIBERBASE'S BRIEF RE:** |
| v. | **GORDON V. VIRTUMUNDO** |
| SUBSCRIBERBASE HOLDINGS, INC., SUBSCRIBERBASE, INC., AND JOHN DOES 1-10 | |
| Defendants. | |

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - i

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** ..................................................................................1 | |
| **II.** | **DISCUSSION** .......................................................................................2 | |
| | A. | Gordon Does Not Have Standing Under CAN-SPAM. ........................2 |
| | B. | Gordon's CEMA and CPA Claims Are Preempted by CAN-SPAM. ...4 |
| | | 1. Under <u>Virtumundo</u>, any State Email Claims Must Be Based on Common Law Theories of Fraud and Deception. ........................5 |
| | | 2. To Recover Under a State-Law Email Statute, a Plaintiff Must Show Material Misrepresentation, a Right to Rely, and Resulting Damage. ........................................................................5 |
| | | 3. Gordon's CPA Claims Also Fail ................................................7 |
| **III.** | **CONCLUSION** .....................................................................................7 | |

## I. INTRODUCTION

According to the U.S. District Court for the Western District of Washington, Plaintiff James S. Gordon, Jr., is a "serial" litigator who files "ill-motivated, unreasonable, and frivolous" lawsuits. Gordon v. Virtumundo, Inc., 2007 U.S. Dist. LEXIS 55941 (W.D. Wash. Aug. 1, 2007). The Ninth Circuit agrees, and in a recent opinion issued on August 6, 2009, determined that Gordon's claims relating to the transmission of commercial email, like the ones he alleges against SubscriberBASE in his Second Amended Complaint ("SAC") (Ct. Rec. 60), are inherently flawed and fail as a matter of law.

In Virtumundo, Gordon sued email marketing companies alleging causes of action identical to the ones in this case—alleged violations of the CAN-SPAM Act of 2003, 15 U.S.C. § 7701 et seq. ("CAN-SPAM"), the Washington Commercial Electronic Mail Act (RCW Ch. 19.190) ("CEMA"), and the Washington Consumer Protection Act (RCW Ch. 19.86) ("CPA"). That court held, and the Ninth Circuit affirmed, that Gordon lacks standing to bring a CAN-SPAM claim, and that his CEMA and CPA claims fail as a matter of law. The same analysis applies here.

Gordon's First Cause of Action for violations of CEMA fails because it is preempted by federal law. Gordon's Second Cause of Action for violations of the CPA, fails because it arises from his failed CEMA claim. Gordon's Third Cause of Action for violations of CAN-SPAM fails because Gordon lacks standing.

Gordon's claims in this case fail for the same reason as his claims in Virtumundo. Allowing him to proceed with them will squander scarce judicial resources and cause SubscriberBASE to incur substantial unnecessary legal fees and costs. In light of the Ninth Circuit's Virtumundo ruling, and for the reasons described below, SubscriberBASE respectfully requests this Court dismiss Gordon's SAC with prejudice.

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - 1

## II. DISCUSSION

### A. Gordon Does Not Have Standing Under CAN-SPAM.

In Virtumundo, the defendants moved for summary judgment alleging, *inter alia*, that Gordon lacked standing under CAN-SPAM because he is not, and never was, an Internet access service adversely affected by violations of CAN-SPAM as required by 15 U.S.C. § 7706(g)(1). *See* Virtumundo, 575 F.3d at 1048. The Western District granted the Virtumundo defendants' motion for summary judgment. Id. at 1047.

The Ninth Circuit affirmed and held that Gordon lacks standing under CAN-SPAM because he is not a *bona fide* Internet access service adversely affected by violations of the CAN-SPAM Act. Virtumundo, 575 F.3d at 1057. ("[W]e conclude that Gordon does not fit any reasonable definition of 'Internet access service' provider.") The Virtumundo court further determined that Gordon sought to receive commercial email for financial benefit and could not be said to be "adversely affected" by its receipt:

> "[t]he burdens Gordon complains of are almost exclusively self-imposed and purposefully undertaken. Here, Gordon acknowledges that he benefits from the receipt of spam through his research and monetary settlements. The fact that Gordon derives substantial financial benefit but endures no real ISP-type harm from commercial e-mail, coupled with his unusual efforts to seek out and accumulate-- rather than avoid or block--spam, demonstrates that he has not been adversely affected by alleged violations of the federal act in any cognizable way."

575 F.3d at 1057.

Gordon's claim to be an Internet access service in this lawsuit also arises from his alleged provision of email accounts to various individuals. (SAC at ¶ 52 ("There is no dispute as to whether or not plaintiff, in his capacity as an IAS, received and/or carried unlawful spam over his facilities - he did.")) However, transmitting email alone is not enough to qualify as an Internet access service: "Contrary to Gordon's suggestion, providing e-mail accounts cannot alone be sufficient." Virtumundo, 575 F.3d at 1051.

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - 2

In addition to not satisfying the technical prerequisites to qualify as an Internet access service, the Ninth Circuit found that Gordon was not a *bona fide* provider of those few services he did claim to provide:

> "[w]e are also troubled by the extent to which Gordon fails to operate as a *bona fide* e-mail provider. As discussed in greater detail below, Gordon has purposefully avoided taking even minimal efforts to avoid or block spam messages. Instead, Gordon devotes his resources to adding his 'clients' e-mail addresses to mailing lists and accumulating spam through a variety of means for the purpose of facilitating litigation."

Virtumundo, 575 at 1052. Gordon is not the kind of party to whom Congress intended to grant standing: "The CAN-SPAM Act was enacted to protect individuals and legitimate businesses—not to support a litigation mill for entrepreneurs like Gordon." Id. at 1057. Gordon's claim to be an Internet access service in connection with this lawsuit is identical to his claim in Virtumundo. He is not entitled to enforce CAN-SPAM against SubscriberBASE or any other party.[1]

The Ninth Circuit further held that, under the circumstances, "it would be difficult, if not impossible" for Gordon to incur the types of harm for which Congress intended to confer standing under CAN-SPAM. 575 F.3d at 1056. If Gordon now claims that he has become a *bona fide* Internet access service provider adversely affected by violations of CAN-SPAM since the Virtumundo decision was issued on August 9, 2009, he should be required to show cause before proceeding with his claims against SubscriberBASE.

---

[1] Gordon claims that he is assisting the Federal Trade Commission in enforcing CAN-SPAM in exchange for a "**reward**". (SAC at ¶ 5, emphasis in original)) However, "'the law' that Gordon purportedly enforces relates more to his subjective view of what the law ought to be, and differs substantially from the law itself." Virtumundo, 575 F.3d at 1056 n. 15.

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - 3

**B.   Gordon's CEMA and CPA Claims Are Preempted by CAN-SPAM.**

The Western District also granted the Virtumundo defendants summary judgment on Gordon's CEMA and CPA claims on the ground that, *inter alia*, they were preempted by CAN-SPAM. Virtumundo, 575 F.3d at 1047. The Ninth Circuit affirmed and significantly narrowed the scope of state law claims that survive federal preemption.

CAN-SPAM pre-empts state laws regulating commercial email "except to the extent that [such laws] prohibit[] falsity or deception..." 15 U.S.C. § 7707(b)(1). In Virtumundo, the Ninth Circuit unequivocally held that "Congress's intended purpose" with respect to the pre-emption of state email laws was "to save from preemption only 'statutes, regulations, or rules that target *fraud or deception*." 575 F.3d. at 1061-62 (*citing* S. Rep. No. 108-102, at 21) (emphasis original). In order to survive preemption, state laws must apply traditional common law fraud standards when imposing liability for the transmission of deceptive emails:

> We are compelled to adopt a reading of the preemption clause that conforms with the statute's structure as a whole and the stated legislative purpose. The CAN-SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication. To find otherwise would create an exception to preemption that swallows the rule and undermines the regulatory balance that Congress established, and which would once again subject legitimate businesses to inconsistent and possibly incompatible state regulations.

Virtumundo, 575 F.3d at 1063 (internal citations and punctuation omitted).

In light of congressional intent and Virtumundo, CEMA claims are preempted unless they are based on common law fraud or deceit. Gordon's claims here fail because he does not allege—nor could he allege—essential elements of a claim based on traditional fraud or deceit:

**1. Under <u>Virtumundo</u>, any State Email Claims Must Be Based on Common Law Theories of Fraud and Deception.**

In <u>Virtumundo</u>, the Ninth Circuit ruled as follows:

> The CAN-SPAM Act established a national standard, but left the individual states free to extend **traditional tort theories such as claims arising from fraud or deception** to commercial e-mail communication.

575 F.3d at 1063 (emphasis added). The <u>Virtumundo</u> court held that Gordon's CEMA claims were preempted because they had "no basis in traditional tort theories". <u>Id</u>. at 1064. Similarly, Gordon's SAC does not allege most of the nine elements required to demonstrate common law fraud[2] in Washington:

> (1) representation of an existing fact;
> (2) materiality;
> (3) falsity;
> (4) the speaker's knowledge of its falsity;
> (5) intent of the speaker that it should be acted upon by the plaintiff;
> (6) plaintiff's ignorance of its falsity;
> (7) plaintiff's reliance on the truth of the representation;
> (8) plaintiff's right to rely upon it; and
> (9) damages suffered by the plaintiff.

<u>Stiley v. Block</u>, 130 Wn.2d 486, 505 (1996). Gordon does not—and under the circumstances cannot—demonstrate that his CEMA claims arise from the common law tort of fraud. Consequently, his CEMA claims do not survive preemption.

**2. To Recover Under a State-Law Email Statute, a Plaintiff Must Show Material Misrepresentation, a Right to Rely, and Resulting Damage.**

As indicated in <u>Stiley</u>, Gordon must prove misrepresentation. <u>Virtumundo</u> confirms that misrepresentation must be material. 575 F.3d at 1061 (*citing* <u>Omega</u>

---

[2] Washington also recognizes the tort of deceit which is "an action of tort, based on fraud". <u>Kritzer v. Moffat</u>, 136 Wash. 410, 417 (1925). Washington courts treat deceit and fraud synonymously. *See, e.g.*, <u>Pike v. Parallel Film Distribs.</u>, 74 Wn. 2d 218, 224 (1968); <u>Barker v. Scandinavian-American Bank</u>, 97 Wash. 272, 276 (1917) (The torts of fraud and deceit have the same elements.).

World Travel, Inc. v. Mummagraphics, Inc., 469 F.3d 348 (4th Cir. 2006) for the proposition that misrepresentation under state law must be material to survive preemption). All Gordon claims here is that he received emails with subject lines that he implies might be misleading in the abstract. (SAC at ¶ 26.) But he must also show that he had a right to rely on each alleged misrepresentation and did in fact rely on it to his detriment. Stiley, 130 Wn.2d at 505.

However, in Virtumundo, the Ninth Circuit held that Gordon "was not in any way misled or deceived". 575 F.3d at 1063. It is also clear that Gordon could never reasonably rely on a subject line in commercial email, as he admits he is a professional plaintiff (Complaint (Ct. Rec. 1) at 1; SAC at ¶ 7) who looks for violations in commercial email for a living. Virtumundo, 575 F.3d at 1056 ("Since at least 2004, Gordon has held no employment. He has never been compensated for any of his purported Internet services, and his only income source has come from monetary settlements from his anti-spam litigation campaign.")

Further, Gordon does not allege that he read, opened, was mislead by any subject line or header information in, or was in any way affected by any email sent by SubscriberBASE. Instead he claims that he was damaged by the receipt of commercial email in general, without regard to the sender. (*See* SAC at ¶¶ 46.a–g, 18, 19, 76, and 77 (Gordon only seeks to recover statutory damages)). Gordon does not specifically allege he was damaged by emails sent by SubscriberBASE and his claims do not survive preemption.

The only potential damages Gordon identifies in his SAC relate to the receipt of commercial emails from SubscriberBASE and other email marketers collectively. (Id. at ¶ 46.) This is insufficient—Gordon is a professional plaintiff (Complaint (Ct. Rec. 1) at 1; SAC at ¶ 7) who admits he seeks to "benefit" from receiving and reviewing commercial email. Virtumundo, 575 F.3d at 1057. The Virtumundo court disapproved of Gordon's abuses of the legal process and noted that the common law provided no relief to a party with self-inflicted harm:

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - 6

> [A]s I understand the history of the common law, it did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award . . . . I believe that the same principles that animated the common law influenced Congress when it enacted the CAN-SPAM Act . . . for a person seeking to operate a litigation factory, the purported harm is illusory and more in the nature of manufactured circumstances in an attempt to enable a claim.

Virtumundo, at 1068 (Gould, J., concurring).

### 3. Gordon's CPA Claims Also Fail

Under Virtumundo, Gordon's CPA claims against SubscriberBASE must also fail. Gordon's CPA claims against SubscriberBASE all hang on his faulty CEMA claims: "Defendants . . . will continue to send commercial electronic mail messages to the plaintiff . . . which will also violate at least one prohibition of [CEMA] and constitute a per se violation of [the CPA]". (SAC at ¶ 79.) As in Virtumundo, Gordon's failed CEMA claims meant that his CPA claims must also be dismissed: "Because Gordon's CEMA claims fail as a matter of law, his CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed." 575 F.3d at 1065.

### III. CONCLUSION

Gordon's lawsuit against SubscriberBASE was baseless upon filing—he sued under CAN-SPAM even after the Western District held that he lacked standing to do so. However, now that the Ninth Circuit affirmed that decision in Virtumundo, and confirmed that Gordon is not a *bona fide* Internet access service adversely affected by a violation of CAN-SPAM as required for standing, his claims are clearly without merit. The Ninth Circuit also dramatically broadened the scope of federal preemption of Washington's CEMA by requiring that any alleged violations must be based on common law fraud. But Gordon cannot and does not allege key elements of that tort, nor would he be able to prove them at trial.

SUBSCRIBERBASE BRIEF RE: GORDON V. VIRTUMUNDO - 7

SubscriberBASE respectfully requests that the Court:

1) dismiss Gordon's CAN-SPAM claims with prejudice on the basis that Gordon lacks standing, or in the alternative, require Gordon to show cause that he satisfies the standing requirement under CAN-SPAM despite the Ninth Circuit's decision in <u>Virtumundo</u>;

2) dismiss Gordon's CEMA claims with prejudice as Gordon has failed to allege facts necessary to support a claim based in traditional common law fraud, including facts demonstrating justified reliance or damages, which Gordon would never be able to demonstrate because of his litigation history and sophistication; and

3) dismiss Gordon's CPA claims with prejudice because they depend on Gordon's preempted CEMA claims.

Dated this 8th day of October, 2009.

                                        Respectfully Submitted,

                                        **NEWMAN & NEWMAN**
                                        **ATTORNEYS AT LAW, LLP**

                                By:   /s/ Derek Linke
                                            Derek Linke, WSBA No. 38314
                                            Derek Newman, WSBA No. 26967

                                            Attorneys for Defendants
                                            SubscriberBASE, Inc and
                                            SubscriberBASE Holdings, Inc.

The undersigned hereby certifies that on this 8th day of October, 2009, I electronically filed the foregoing **SUBSCRIBERBASE'S BRIEF RE: GORDON V. VIRTUMUNDO** with the Clerk of the Court using the CM/ECF System, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

JAMES S. GORDON, JR.
9804 Buckingham Drive
Pasco, WA 99301

I declare under penalty of perjury under the laws of the United States and the State of Washington that to my knowledge the foregoing is true and correct.

Executed this 8th day of October, 2009 at Seattle, Washington

By: /s/ Derek Linke
Derek Linke

PROOF OF SERVICE