THE HONORABLE ROBERT H. WHALEY

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
OCT 20 2009
JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WASHINGTON AT RICHLAND

| | |
|---|---|
| JAMES S. GORDON, JR., Franklin County, Washington, Plaintiff, | Case No.: CV-08-5037-RHW |
| vs. | PLAINTIFF'S STATEMENT RE: IMPACT OF 9TH CIRCUIT DECISION |
| SUBSCRIBERBASE HOLDINGS, INC., SUBSCRIBERBASE, INC., and John Does 1-10, Defendants | JURY TRIAL REQUESTED |

TO: CLERK OF COURT
AND TO: COUNSEL FOR DEFENDANTS

9th CIRCUIT IMPACT - 1

# INTRODUCTION

The Gordon v. Virtumundo decision was the progeny of plaintiff's counsel's negligence and defendants' counsel's fraud and misrepresentation. What lies hidden in the defendants' introduction is the fact that Gordon's claims were not argued in the Gordon v. Virtumundo decisions. Instead the summary judgment motions and order featured a claim that plaintiff did not argue. His former attorney —over plaintiff's objections attempted to argue a novel theory that no one has argued before or since. And, in the defense of plaintiff, during the briefing for the summary judgment by defendants' counsel, plaintiff's counsel was silent. None of plaintiff's multiple theories of the case were argued or defended.

In plaintiff's first amended complaint in the instant case he elucidates multiple claims, which span both statutes, i.e. Can-spam and the Washington State anti-spam statute [aka] CEMA. Examples of the offending subject lines were included and more specifics will be introduced in plaintiff's motion for summary judgment.

Washington State's Attorney General sued this defendant for the identical subject line violations and misleading emails that are in plaintiff's repository of emails. Plaintiff's claims overlap the Attorney General's claims in terms of the nature of the claims and the timing of the claims.

Defendants are trying to ride the coattails of the fraud and misrepresentation in the Virtumundo case hoping the sentiment somehow carries over to them. By the way, Virtumundo was (and may still be) a business partner/associate of the instant defendants.

Part of the significance of the last comment is that defendants have benefited from the reduced number of emails that were in plaintiff's possession along with the analyses of those emails, since defendant's business partners, Virtumundo seized and destroyed the evidence contained on plaintiff's computers.

The only claim, in the partial summary judgment, that was argued for and against by plaintiff's counsel was the "from line" theory. This court is aware that no such claim is being presented or argued in this case. Plaintiff is arguing that defendants have sent plaintiff false and misleading subjects in emails, which the state of Washington, via a consent decree, states were sent in violation of Washington State law. This is the very same law that plaintiff relies on for some of his claims in the instant lawsuit.

Plaintiff's CEMA claim is pre-empted only if it were identical to the Virtumundo claim – it is not. The claims presented to this court are not identical to the Virtumundo court. Counsel cannot point to a shred of evidence which these two cases have in common in terms of the actual claims presented to the court for

consideration. The violations of Consumer Protection Act are triggered by the violations of CEMA – as stated in the statute.

Again, plaintiff's claims are, in part, identical to the Attorney General's claims – not the Virtumundo single claim – from line obfuscation.

## DISCUSSION

Plaintiff stands by his allegation of fraud and misrepresentation by Virtumundo and its counsel. That counsel also represents the above-captioned defendants. Plaintiff has selected only one of the set of lies that were featured in the Virtumundo – rather than taking on the whole "lot of lies" perpetrated on that court and plaintiff. That lie is the one of the Internet Access Service and spam business.

In the accompanying declaration, plaintiff explains what type of business he was in and the Internet related activity he was engaged in. By the way, this information was in plaintiff's deposition testimony and other briefing which mysteriously never saw the light of day in Virtumundo.

Briefly, plaintiff made a business proposition to members of his fraternal organization, Alpha Phi Alpha Fraternity, Inc. in January of 2005. He stated that he would create web sites and created email accounts for the respective chapters in the

Northwest District he resides in. **EXHIBIT A** is the Whois domain that plaintiff "donated" to his fraternity.

In May 2005, plaintiff began that mission of placing the fraternal organization – on the map by leasing a virtual dedicated server from Godaddy.com [this has been called his spam business by Virtumundo]. The fraternity was going to pay the cost of the server. Plaintiff added a few friends and family to the server for no additional charge. There were over one hundred (active) members at that time. I misunderstood the number, at that time, as I later found out that the total number included inactive members as well – bringing the total number of users for plaintiff's Internet Access Service to over 250 members including plaintiff's family and friends. **EXHIBIT B**

Plaintiff's declaration details costs incurred by him in ramping up to provide these services. **EXHIBIT C** The question now shifts to how large must an Internet Access Service be to avail itself of the law meant to protect Internet Access Services. And can a one person, home-based business be classified as an Internet Access Service.

Plaintiff, spent many thousands of dollars on six new computers, Internet access, software, technical support from Godaddy.com, and expanded capacity. Plaintiff also lost customers due to the heavy burden of the incessant spamming by defendants and the forensic search for network abusers like defendants.

The foregoing information (and more) was not on the record in Virtumundo in terms of the summary judgment motion and its defense. Plaintiff will gladly submit to a "show cause" hearing wherein he can elaborate on the harms that he suffered and submit evidence by prospective witnesses, if necessary. However, he trusts that the evidence submitted with this declaration suffices, for the time being.

## ALLEGED CEMA PRE-EMPTION

15 USC 7707 states the following:

> (b) STATE LAW.—
> (1) IN GENERAL.—This Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits **falsity or deception** in any portion of a commercial electronic mail message or information attached thereto. [emphasis added]

Plaintiff's Second Amended Complaint states:

> [#70] Each of the E-mails misrepresents or obscures information in each of the E-mails and each Email misrepresents or obscures information in identifying the point of origin or the transmission path thereof, and thereby violates the Washington CEMA (19.190 et seq.), and further each of these E-mails contains header information that is materially **false** or materially **misleading**, and thereby violate Federal Can-Spam Act of 2003, and/or Each of the E-mails contain **false** or **misleading** information in the subject line of the Email.

> [#72] Each of the emails intentionally misrepresents and/or obscures any and/or all information that could be used in identifying the point of origin or transmission path thereof, contains header information that is materially **false** or materially **misleading**, fails to include or contain a valid physical address in the body of the Email or contains multiple addresses none of which identify the sender clearly or conspicuously, domains entered into the Email intentionally use a falsely registered or cloaked domain...

Defendants, also, used plaintiff and plaintiff' customers' domains without permission – a violation of CEMA – they feigned a relationship where none existed.

In Defendants' point "B", counsel is attempting to mislead the court by referring to "fraud or deception" – the excerpt from the statute above, i.e. 15 USC 7707 specifically use the terms "falsity or deception" – not fraud. The fraud argument is sophistry. Plaintiff explicitly uses the terms "falsity or deception" in his complaint when referring to his allegations of violations of the law – as did the Attorney General in its complaint against these defendants.

The subsequent arguments used by counsel based on the "fraud" standard exemplify the type of fraudulent or misleading arguments it used in Virtumundo. Counsel is taking this type of argument to each of the courts that it enters. I trust the deception by counsel stops with this court.

# ADDITIONAL BRIEFING COMMENTS

Plaintiff presented the following briefing facts to other courts that counsel has appeared before. Perhaps, it will assist this court with its decision. Although the exhibits have been omitted, each one is available for this court's inspection.

## Impact of 9th Circuit Decision

A cursory look at the decision of the 9th Circuit Court of Appeals might lead one to assume that the instant case should have its cause of action for Can-spam violations removed. However, a more detailed look at the pleadings and the evidence produced via declarations by plaintiff might instruct one to look deeper at the issues and allegations. For example, counsel for Virtumundo argued:

1. Plaintiff's phone service provider, Verizon, did not allow plaintiff to operate as an Internet Access Service. Subsidiary arguments to this assertion were presented.

2. Plaintiff did not filter spam – instead he solicited spam.

3. Plaintiff had no CEMA claims or the claims should be pre-empted.

4. Plaintiff was not adversely affected by spam.

5. Plaintiff ran a spam business.

Plaintiff will address each argument above and add evidence that did not make it into the "record" for the appeal and/or was not addressed by the district court.

### Argument #1 Verizon Prohibitions

This is an easy argument to refute as plaintiff never used Verizon as a web hosting company. Therefore, each subsidiary argument built upon this error or misrepresentation is false or untrue. Counsel got away with this misrepresentation as plaintiff's former counsel did not challenge it. Plaintiff actually used Valueweb, Webmasters.com, and Godaddy for his web hosting needs, not Verizon. **EXHIBIT A** contains two emails with Valueweb and Webmasters.com in the header of each email. Many of the emails on the record thus far have a notation regarding SpamAssassin, which is the spam filter that Godaddy employs. None of the tens of thousands of emails in the current litigation contain a Verizon server / domain in the header of the "offending" email or cause of action.

### Argument # 2 Plaintiff Did Not Filter Spam

All or virtually all of the emails that plaintiff has placed into evidence have the name, SpamAssassin in the header as this is the spam filter that I used the most, followed by MailWasherPro, and SpamFire. **EXHIBIT B** One of these filters would always be on and at times I would use two filters. I even experimented with

using all three. The emails on the record in Virtumundo did have a notation made by this spam filter in the emails submitted to the court. That fact is true of the emails in the instant case – subsequent to May of 2005.

Plaintiff diligently and consistently filtered spam. However, defendants [Virtumundo et al] were successful in defeating the filtering efforts of plaintiff. For example, defendants would send spam to me from one "host name" and in the next email there would be another "host name" – precluding effective filtering as the new "host name" would not be "known" to the spam filter, as in the four following examples:

1. 10/Oct/2005 14:57:38 consolidateyourbills@adknowledgemail.com

   Subject: One payment. All your bills.- Deleted [email deleted]

2. 10/Oct/2005 14:57:38 findadulteducation@adknowledgemail.com

   Subject: It's not too late for an education.- Deleted [email deleted]

3. 10/Oct/2005 14:57:39 searchforlawyers@adknowledgemail.com

   Subject: Actual help from real lawyers.- Deleted [email deleted]

4. 10/Oct/2005 14:57:39 cookyourdinner@adknowledgemail.com

   Subject: Get dinner done with a new stove.- Deleted Reported [this email was reported to a third party "universal" reporting center and deleted]

Defendant(s) succeeded in getting many thousands of spam to my server using the foregoing process – deceiving the filters by changing the sender's identity with each new spam run. **EXHIBIT C**

Please note the times of the four emails, above – all sent were sent within seconds of each other. Virtumundo et al used this and other techniques to send over 20,000 spam to plaintiff – more than 10,000 after his lawsuits against them were filed. And they do so with impunity as our courts have not yet caught up with the common subterfuge and theft of service these spammers engage in. The above-captioned defendant also used these techniques to deceive spam filters.

**SPECIAL NOTE:** Plaintiff filed a second lawsuit against Virtumundo in state court in January 2008, i.e. Franklin County. Plaintiff filed a Preservation of Evidence letter in that case [Case No.: 08-2-50143-7]. Two months or so later, Virtumundo destroyed the hard drives and back-up drive of plaintiff. These hard drives were seized under a writ of execution – improperly obtained as to the computers, which contained the stored communications of plaintiff's clients. These stored communications are [were] evidence in at least six on-going federal lawsuits and one state lawsuit. Because there was no warrant issued for the business hard drives [and there was no criminal proceedings], this seizure was illegal.

There are two federal laws that have been violated by Virtumundo and its counsel. i.e. destroying evidence in a federal lawsuit and seizing stored communications without a warrant and outside a criminal proceeding.

The destruction of evidence has seriously prejudiced plaintiff's lawsuit as critical analysis [collected / produced over four years] are no longer available to plaintiff along with [well over 300,000] "illegal" spam.

**ADDITIONAL NOTE:** Virtumundo claimed that plaintiff subscribed and unsubscribed, repeatedly. Inclusive in their definition was opening an email, which triggered a web beacon that defendants, surreptitiously send to computers – without the owners' knowledge or permission. Within that expansive context, I did open their emails on many occasions to do the forensic research NOT to re-subscribe to their emails. But, in the normal context of the term subscribing to commercial email, I voluntarily subscribed during August and September 2003. And from October 2004 to the Spring of 2004, I systematically unsubscribed to all of the offers that I had subscribed to in 2003 as the offers were fraudulent – no promised prize was ever given to me or my "customers".

Beyond this limited context, plaintiff did not subscribe to defendant (including Virtumundo) offers to receive commercial email. And no defendant has ever provided proof / evidence to the contrary – yet defendants continue to make this assertion.

**Argument # 3 Cema Claims Should Be Pre-Empted**

Plaintiff's former counsel failed to place into evidence over 400 emails which had "bad subject lines". Some examples of actual Virtumundo subject lines, follow:

1. Do you feel trapped? - 8 emails
2. Get out on the floor - 1 email
3. Here's something to crow about - 10 emails
4. Just what you're looking for - understanding - 8 emails
5. No tricks, no surprises - 53 emails
6. Now available - 23 emails
7. Take the next step - 32 emails
8. Take the next stop - 18 emails
9. You can come out now - 7 emails
10. Pass Along the Good News - 4 emails
11. Are they going to choose you - 5 emails
12. Every journey begins with a first step - 5 emails
13. It's cheating...but...it works! - 2 emails
14. Please call in asap - 20 emails
15. We can't keep this a secret - 15 emails
16. 3 hour countdown - 5 emails
17. Attention Moms - 4 emails
18. Be Confident! - 4 emails

19. Don't just talk the talk. - 11 emails

20. =?windows-1252?Q?Don=92t_just_do_something=2E_Sit_ther?=
    =?windows-1252?Q?e=2E?=

21. =?windows-1252?Q?Mother=92s_Day_Special_-_18_roses_w?=
    =?windows-1252?Q?ith_vase_=2429=2E99?=

22. =?windows-1252?Q?Now=92s_a_good_time_to_get_out_of?=
    =?windows-1252?Q?_debt=2E?=

None of the subject line above will tell the reader or recipient what the email is about. One is hard pressed to make an educated guess regarding the content of the email. Additionally, defendants use domains without the permission of third parties.

Finally, plaintiff is alleging falsity and deception in the headers of the emails as well as the registration of false and cloaked domains – issues which preclude pre-emption by the federal law.

### Argument # 4 Plaintiff Was Not Adversely Affected

The declaration which accompanied the complaint in the instant action details the adverse impact of plaintiff as he needed to purchase 5-6 new computers, paid a three-fold increase in his web hosting fees (to $2,500 per year), lost a group of more than 100 prospective customers – some of the set-up work had begun, and more [receipts and declarations were provided to the Court].

Plaintiff was also adversely affected by a pattern or practice of violations by defendants over 3-5 years or more.

### Argument # 5 Plaintiff Ran A Spam Business

Virtumundo counsel was apprised of my actual business. **EXHIBIT D** But, counsel persisted in the fiction that the spam business was my actual business. When, in fact, the spam business was used to finance the on-going business of plaintiff. The characterization of a greedy, opportunistic anti-spam zealot does not comport with fact or history. It was a story told by counsel to (successfully) mislead the court into thinking the perpetrator was somehow the victim of plaintiff's opportunism.

### CONCLUSION

Counsel for defendant, Virtumundo, pulled a fast one in terms of eschewing the truth and facts in the submission of briefs to both the district court and the 9th Circuit. Their chicanery should not be rewarded or condoned by this or any other court.

Plaintiff statements, above, are easily verified. Whereas, the five assertions, above - among others, are unsupportable fabrications and/or mischaracterizations

of the record by defendants' counsel. It is my belief that counsel is attempting to pollute this proceeding with unproven assertions used in the Virtumundo case. Plaintiff trusts that he is given the opportunity to present his case to a jury.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 19th day of October, 2009

_James S. Gordon, Jr._
James S. Gordon, Jr.
9804 Buckingham Drive
Pasco, WA 99301
509-210-1069

## CERTIFICATE OF SERVICE

I, hereby, certify that on October 19, 2009, I filed this statement regarding the impact of the 9th Circuit's decision on this case with this court and mailed a copy to counsel of record for Defendant.

_James S. Gordon, Jr._
James S. Gordon, Jr.