**THE HONORABLE ROBERT H. WHALEY**

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 03 2009

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WASHINGTON AT RICHLAND

| | |
|---|---|
| JAMES S. GORDON, JR., a married individual, Plaintiff, <br><br> v. <br><br> SUBSCRIBERBASE HOLDINGS, INC., SUBSCRIBERBASE, INC., and John Does 1-10, Defendants | Case No.: CV-08-5037-RHW <br><br> PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

TO: CLERK OF COURT
AND TO: COUNSEL FOR DEFENDANTS

MTN4 PART SJ- 1

# STATEMENT OF UNDISPUTED FACTS

1. Plaintiff made multiple requests of defendants to stop sending him commercial email ads [hereinafter spam], after January 1, 2004.

2. Washington State Attorney General sued Subscriberbase et al over allegedly deceptive email practices.

3. Defendants entered into a consent decree with the Attorney General on or about April 30, 2008.

4. Defendants continued to send spam to Washington residents after the consent decree took effect.

5. Defendants claim that their commercial emails are compliant with the federal Can-spam Act of 2003.

6. Plaintiff sued defendants about commercial email in May 2008.

7. Plaintiff did not give defendants affirmative consent to commence the sending of commercial email to him.

8. Plaintiff's customers did not give defendants permission to send them commercial email.

9. Defendants "used" domains belonging to plaintiff and plaintiff's customers without their permission.

10. Defendants claimed that items were free in the subject lines, but conditions and costs were placed on the receipt of these items by defendants.

MTN4 PART SJ- 2

## ISSUES BEFORE THE COURT

1. Were defendants notified that plaintiff and/or his customers did not want to receive its commercial email?

2. Did defendants claim to be Can-spam compliant in communications with/to the public?

3. Did defendants use plaintiff's or plaintiff's customers' domain names without their permission?

4. Did defendants use misleading or deceptive subject lines in their commercial emails?

## LEGAL STANDARD

A court should grant summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A court must regard the evidence in the most favorable light to the nonmoving party. *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir.2004). Once a summary judgment motion is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). There are no material facts in dispute, and this case is ripe for summary judgment as to the issues presented here.

# ARGUMENT

1. Defendants' spamming enterprise is held together by fraud, falsity, and/or deception. Defendants claim to the public and their customers that they are can-spam compliant, but they are not.

2. Defendants do not honor or comply with a) the notification proscriptions of the law b) the prohibition against using domain names without permission c) the inclusion of identifiers and opt-out links in all their spam  d) the prohibitions against false, deceptive, or misleading subject lines  e) prohibition against using forged header information f) the prohibition against registering domains with false or fraudulent data.

3. Additionally, defendants violated state fraud statutes by engaging in false advertisements [claims] of can-spam compliance. Actual Can-spam compliance is a benchmark that legitimate companies can claim to make them a more attractive advertising service.

4. Defendants feign relationships with victims of their spam, trespass onto networks to illegally relay its unwanted electronic cargo on the general public, businesses, and government.

5. Defendants have used many distinct identities to circumvent the spam filters of the recipients of its spam.

MTN4 PART SJ- 4

6. Plaintiff's declaration examines other areas wherein defendants have used fraud, falsity, or deception to victimize the public, businesses, government, and *their own customers [and affiliates]*.

7. Defendants use the Can-spam Act of 2003 as a shield to hide from lawsuits. Defendants' fraudulent claims of compliance with the federal and state anti-spam statutes violate false advertising prohibitions in this state.

8. Arbitron and Nielsen provide ratings services for radio and television ad rates, respectively. However, there really is no arbiter for the illegal spamming enterprises that are preying on everyone with a computer – fraudulently claiming attributes which they do not have.

9. Courts have not [until now] been informed about how thoroughly corrupt these spamming organizations are as they masquerade as legitimate businesses.

10. For the purposes of this partial summary judgment motion, plaintiff is limiting the scope to the fraudulent, false, deceptive, or misleading subject lines in defendants' emails.

11. Feigning legitimacy as a business entity has led defendants' so-called clients into a web of illegal behaviors and exposing these clients to millions of dollars of damages and possible criminal charges.

12. Defendants' and defendants' affiliates/ agents sent spam that does not comply with federal and state laws as it ignores notification requirements, uses domain names without permission, and uses false and privacy protected domains.

13. Defendants' clients stand to lose tens (or maybe) hundreds of millions of dollars due to lawsuits by victims of these predatory defendants.

14. Although, this partial summary judgment focuses on the false, misleading, or deceptive subject lines, defendants' email practices as a whole reflect a thoroughly corrupt enterprise which preys on individuals, businesses, government, and to an extent a court system that has yet to catch up on the scope of corruption spammers bring to court rooms across America.

## CEMA

1. Washington's Commercial Electronic Mail Act, RCW 19.190 et seq. (CEMA) is in some respects far more straightforward than the federal CAN SPAM Act. The specific provision that is relevant to show liability is RCW 19.190.020. It states:

> (1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:
>
> (a) **Uses a third party's internet domain name without**

**permission of the third party**, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message; or

(b) **Contains false or misleading information in the subject line.**

(2) For purposes of this section, a person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address. [emphasis added]

2. All that plaintiff needs to show is that a) the emails sent by defendant included plaintiff's or plaintiff's customers domain names and that b) the domain owner or "registrant" did not give defendant permission to use their respective domain names in its commercial email advertising c) the domain name "contact information" was available in a Whois look-up utility or program on the Internet.

3. Printing a copy of the email with the full header exposed will illustrate the insertion of plaintiff's domains into defendants' spam [satisfying the first requirement]. The declarations of plaintiff's customer who are / were users of the interactive computer service provided by plaintiff submitted in plaintiff's declaration establish the second requirement. [these two declarations accompany this motion as **EXHIBIT 1** and **EXHIBIT 2**]. For the third requirement, the Whois documents supplied with the declaration speak for themselves in terms of containing the domain ownership and

MTN4 PART SJ- 7

contact information. All of the emails that form the basis of this motion were sent to plaintiff and/or to one of the email addresses and internet domain names registered and owned by the "affiants" in the attached declarations.

4. Further, all of these domain names and email addresses were operated on plaintiff's server. All that remains to establish liability under CEMA is that plaintiff must show the emails, in question, contain defendants' domains or used defendants' brands or contained defendants' contact information. The emails speak for themselves in terms of which emails contain plaintiff's domains, i.e. "gordonworks.com", omniinnovations.com, or greatnorthwes-alpha.org, or rcw19190020.com.

## DAMAGES

1. CEMA provides for the following damages:

   **RCW 19.190.040 Violations — Damages.**
   (1) Damages to the recipient of a commercial electronic mail message or a commercial electronic text message sent in violation of this chapter are **five hundred dollars**, or actual damages, whichever is greater.
   (2) Damages to an interactive computer service resulting from a violation of this chapter are **one thousand dollars**, or actual damages, whichever is greater. [emphasis added]

2. Defendants have sent hundreds of emails with offending subject lines; there are thousands of emails which violate other parts of CEMA.

MTN4 PART SJ- 8

# CONCLUSION

1. Plaintiff has identified the facts attendant to the violation of the notification requirement of the Can-spam Act by defendants, the use of domains without permission, use of misleading or deceptive subject lines, violations of a consent decree with Washington State's Attorney General and more.

2. Plaintiff's lawsuit against defendants served as a clear line in the sand in terms of notifying them that he did not want their spam. Rather than cease sending it, defendants assumed the posture that since plaintiff had no "standing" he was simply out-of-luck in terms of stopping the spam abuse.

3. Defendant is not only paying lip-service to Can-spam compliance, but they are also fraudulently claiming compliance with that federal statute – defrauding their customers, the public, business and government.

# RELIEF SOUGHT

1. Damages of $1,000 for each offending email sent to plaintiff's Interactive Computer Service and damages of $500 for offending email sent to plaintiff, directly.

2. Such other and further relief that his court deems appropriate.

## RESERVED RIGHTS

Many of defendant's emails contain multiple violations of state law. For example, there are emails which have bad subject lines, forged headers, and/or false domains. Plaintiff reserves the right to introduce the other and additional violations of laws contained in these and other emails from defendants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 1st day of December, 2009.

James S. Gordon, Jr.
9804 Buckingham Drive
Pasco, WA 99301
509-210-1069

## CERTIFICATE OF SERVICE

I, hereby, certify that on December 3, 2009, I filed this document with the court and I have mailed a copy to counsel of record for Defendants.

James S. Gordon, Jr.

MTN4 PART SJ- 10